### In re ASBESTOS CLAIMS MANAGEMENT CORPORATION, Debtor.

Bankruptcy No. 02–37124–SAF–11.

Civ. A. No. 02–CV–1779–K.

United States District Court,
N.D. Texas,
Dallas Division.

June 5, 2003.

Michael A. Rosenthal, Aaron G. York, Kimberly A. Geiler, Gibson, Dunn & Crutcher LLP, Dallas, TX, for Debtor.

**ORDER CONFIRMING THE THIRD AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR ASBESTOS CLAIMS MANAGEMENT CORPORATION (WITH TECHNICAL MODIFICATIONS) AND ISSUING INJUNCTIONS UNDER SECTIONS 524(g) AND 105(a) OF THE BANKRUPTCY CODE**

KINKEADE, District Judge.

Asbestos Claims Management Corporation, debtor and debtor in possession (the "Debtor" or "ACMC") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on August 19, 2002 (the "Petition Date"). The Debtor filed its Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Asbestos Claims Management Corporation (the "Third Amended Plan") on December 12, 2002.[1] On April 21, 2003, ACMC filed those certain Technical Modifications to Third Amended Plan, dated April 21, 2003 (the "Technical Modifications"). The Third Amended Plan, as modified by the Technical Modifications and together with the Plan Documents and all exhibits and attachments thereto, is herein called the "Plan."[2] The Plan pro-

1. Capitalized terms used in this Order shall have the meanings ascribed to them in the Plan, unless otherwise defined herein. Words and terms defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed therein to such words and terms, unless a different definition is given in the Plan.

2. For ease of reference, on April 21, 2003, ACMC filed an amended and restated version

vides, among other things, for the issuance of the permanent Supplemental Injunction under sections 524(g) and 105(a) of the Bankruptcy Code and of the Asbestos Insurance Company Injunction under section 105(a) of the Bankruptcy Code. The Confirmation Hearing to consider confirmation of the Plan was held on April 24, 2003 and May 1, 2003 before The Honorable Steven A. Felsenthal, Chief United States Bankruptcy Judge for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"). The Bankruptcy Court has considered (i) all of the testimony presented and evidence admitted at the Confirmation Hearing; (ii) the papers and pleadings on file in the Reorganization Case, (iii) the arguments of counsel; and (iv) the law applicable to the case. Following the Confirmation Hearing and in conjunction with this Order, the Bankruptcy Court entered its Findings of Fact and Conclusions of Law Regarding the Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Asbestos Claims Management Corporation (With Technical Modifications) (the "Findings and Conclusions"), and submitted its Report and Recommendation to the District Court (the "Court").

 This Court has reviewed (a) the Plan, all pending objections to the Plan and the Debtor's memorandum submitted in support of the Plan and in opposition to the pending objections, (b) all evidence and argument presented at the Confirmation Hearing, including but not limited to the Exhibits, the Affidavits submitted in support of the Plan and the transcript of the Confirmation Hearing, (c) the Findings and Conclusions and the report of the Bankruptcy Court recommending (the "Bankruptcy Court's Recommendation")

that this Court should approve the Findings and Conclusions and enter the Confirmation Order, together with all other bench rulings entered by the Bankruptcy Court in connection with the Confirmation Hearing. Based on the Findings and Conclusions, the Bankruptcy Court's Recommendation, together with all other bench rulings entered by the Bankruptcy Court in connection with the Confirmation Hearing, all of which are adopted in their entirety by this Court and incorporated in this Confirmation Order as if set forth fully herein, and for all of the reasons set forth therein, it is hereby ORDERED, ADJUDGED AND DECREED:

## A. General Decrees and Implementation

1. *Plan Confirmation.* The Plan as modified by the Technical Modifications (including all exhibits and all attachments to the Plan and all Plan Documents (including the New NGC Plan Documents and the NGC Bodily Injury Trust Documents)) is hereby confirmed in its entirety, and each and every provision contained therein is hereby approved in its entirety. In the event of a conflict between the terms or provisions of the Plan and the Plan Documents, the terms and provisions of the Plan shall control the Plan Documents. Notwithstanding the foregoing, in the event of a conflict between the terms or provisions of the Plan and the New NGC Plan Documents, the terms and provisions of the New NGC Plan Documents shall control the Plan. In the event of a conflict between the terms of the Plan or the Plan Documents (including the New NGC Plan Documents), on the one hand, and the terms of this Confirmation Order, on the other hand, the terms of this Con-

of the Third Amended Plan that incorporates the Technical Modifications, as well as the updated Plan Documents.

firmation Order shall control. In the event of a conflict between the terms of any bench ruling and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. The provisions of the Plan related to the CCR Reimbursement Agreement Settlement shall automatically be effective, without further order of the Bankruptcy Court or this Court, if and when the Debtor's motion to approve such settlement filed in the Reorganization Case is approved by the Bankruptcy Court, and such settlement is fully implemented. The provisions of the Plan related to the *Prostok* Bondholder Settlement shall automatically be effective, without further order of this Court, if and when such settlement filed in the NGC Reorganization Cases is approved by the Bankruptcy Court, and such settlement is fully implemented.

2. *Approval of Technical Modifications.* As set forth in this Court's separate order on the Debtor's Motion to Determine That the Technical Modifications to Debtor's Third Amended Plan of Reorganization Do Not Adversely Affect Any Creditor, the Technical Modifications are approved and the Third Amended Plan shall be modified to the extent set forth therein and as provided in paragraph 113 below. Acceptances and rejections previously cast for or against the Third Amended Plan are deemed to constitute acceptances or rejections of the Plan as modified by the Technical Modifications.

3. *Objections Overruled.* All objections to Confirmation of the Plan (and all reservations of rights contained therein), other than those withdrawn in writing prior to, or on the record at, the Confirmation Hearing, are overruled or denied, as the case may be. Any objections to the Findings and Conclusions and the Bankruptcy Court's Recommendation, are overruled or denied, as the case may be. Without limiting the generality of the foregoing, the Court, for the reasons set forth in the Findings and Conclusions, overrules the objections to confirmation of the Plan filed by the law firm of Cascino Vaughan Law Offices and by the law firm of Goldberg, Persky, Jennings & White, P.C. For the reasons set forth in the Findings and Conclusions, the Court hereby approves, and authorizes the Debtor to enter into and take any actions necessary to perform, that certain agreement (the "AMICO Agreement"), dated April 22, 2003, by and between ACMC and American Motorists Insurance Company ("AMICO") to resolve the objection to confirmation filed by AMICO. No further notice of the AMICO Agreement need be given.

4. *Approval of Plan Documents.* Consistent with the Plan, the following Plan Documents, and all amendments, modifications and supplements thereto (which agreements and documents shall be substantially in the respective forms filed by the Debtor, in accordance with section 1.1.131 of the Plan, on or about April 18, 2003, and admitted into evidence at the Confirmation Hearing), including, without limitation, all annexes, exhibits, and schedules thereto, and all terms and conditions thereof, are determined to be fair and reasonable and are hereby approved:

| Plan or Disclosure Statement Exhibit Designation | Name of Document |
| --- | --- |
| Plan Exhibit A | Claims Resolution Procedures |
| Plan Exhibit B | NGC Bodily Injury Trust Agreement and Annexes Thereto |
| Plan Exhibit C | List of Executory Contracts and Unexpired Leases Assumed by the Debtor |

| Plan or Disclosure Statement Exhibit Designation | Name of Document |
| --- | --- |
| Plan Exhibit D | New NGC Settlement |
| Plan Exhibit E | Restated and Amended Certificate of Incorporation of Reorganized Asbestos Claims Management Corporation |
| Plan Exhibit F | Restated and Amended Bylaws of Reorganized Asbestos Claims Management Corporation |
| Plan Exhibit G | Asbestos Claims Indemnification Agreement |
| Plan Exhibit H | Fee Shifting Indemnification Agreement |
| Plan Exhibit I | New NGC Note |
| Plan Exhibit J | New NGC Settlement Release |
| Plan Exhibit K | *Prostok* & School District Release |
| Plan Exhibit M | Reorganized ACMC Tax Benefit Acknowledgement |
| Plan Exhibit N | Form of Standby Letter of Credit |
| Plan Exhibit O | Stipulation Resolving Subsequent Asset Valuation Issues |
| Plan Exhibit P | New NGC Settlement Closing Agreement |
| Plan Exhibit Q | List of BI Settlement Agreements |
| No Exhibit Number | *Prostok* Bondholder Settlement |
| No Exhibit Number | *Prostok* Bondholder Release |
| Disclosure Statement Exhibit J | TSI Shareholders' Agreement |
| Disclosure Statement Exhibit K | TSI Comprehensive Services Agreement |

5. *Modifications to Plan Documents.* Prior to their execution and delivery, if applicable, the Plan Documents may embody such further changes and modifications thereto as may be approved by their respective signatories executing the same; provided, however, that any such change or modification that would have a material adverse effect on the parties receiving consideration or rights under the Plan will not be effective unless approved by the Court after due notice and hearing.

6. *Approval of Asbestos Insurance Settlement Agreements.* Consistent with the Plan, the following Asbestos Insurance Settlement Agreements, and all amendments, modifications and supplements thereto (which agreements and documents shall be substantially in the respective forms admitted into evidence at the Confirmation Hearing), including, without limitation, all annexes, exhibits and schedules thereto, and all terms and conditions thereof, are hereby approved and the Asbestos Insurance Companies parties thereto are deemed Protected Parties for purposes of the Supplemental Injunction:

| Confirmation Hearing Exhibit Number | Name of Document |
| --- | --- |
| ACMC Exhibit 40 | Settlement Agreement with Affiliated FM Insurance Company |
| ACMC Exhibit 41 | ettlement Agreement with Stonewall Insurance Company |
| ACMC Exhibit 42 | Settlement Agreement with Old Republic Insurance Company |

| Confirmation Hearing Exhibit Number | Name of Document |
| --- | --- |
| ACMC Exhibit 43 | Settlement Agreement with Houston General Insurance Company |
| ACMC Exhibit 44 | Settlement Agreement and Release with The Constitution State Insurance Company |

7. *Ratification of Post–Petition Transactions.* All transactions effected by the Debtor during the period from the Petition Date through and including the Effective Date are hereby approved, ratified, and confirmed.

8. *Authority to Implement Plan.* The Debtor, Reorganized ACMC, the NGC Bodily Injury Trust and their respective officers, directors, trustees, agents, representatives, and attorneys, and each other Entity having duties or responsibilities under the Plan, the Plan Documents or this Confirmation Order (collectively, the "Implementing Parties") are hereby authorized and empowered to effectuate and carry out all of the provisions of the Plan, the Plan Documents and this Confirmation Order and to take such other actions in connection therewith as they may deem to be necessary or appropriate to accomplish the purposes of the Plan, the Plan Documents and this Confirmation Order. The Implementing Parties are authorized and empowered to, among other things: issue, execute, deliver, file, or record, as appropriate, the Plan Documents or this Confirmation Order; take any action contemplated by the Plan Documents or this Confirmation Order; and issue, execute, deliver, file, or record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, and perform such other acts, as they deem consistent with and necessary or appropriate to implement, effectuate, and consummate the Plan, the Plan Documents and this Confirmation Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, stockholders, trustees, or beneficiaries, and with like effect as if such actions had been taken by unanimous action of the respective directors, stockholders, trustees, or beneficiaries of such Implementing Parties. The President or Secretary of the Debtor or Reorganized ACMC is authorized to certify, or attest to any of the foregoing actions.

9. The Implementing Parties are further hereby authorized and empowered to (a) cause to be filed with the Secretary of State or other applicable officials of any applicable Governmental Units any and all certificates, agreements, or plans of merger, dissolution, liquidation, or amendment consistent with and necessary or appropriate to implement the Plan, the Plan Documents, and this Confirmation Order and (b) amend and restate certificates or articles of incorporation, by-laws, or certificates or articles of amendment and take all such other actions, filings, or cause recordings to be made, as may be required under appropriate provisions of the applicable laws of all applicable Governmental Units. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such Implementing Party to so act.

10. The Implementing Parties are hereby authorized and empowered to execute and deliver, and the initial Trustees are hereby authorized and empowered to execute and receive, the NGC Bodily Injury Trust Documents.

11. All matters provided for under the Plan involving the corporate structure of the Debtor or Reorganized ACMC, or any corporate action to be taken by, or required of the Debtor or Reorganized ACMC, shall be deemed to have occurred and be effective as provided in the Plan, and shall be authorized and approved in all respects without any requirement for further action by the stockholders or directors of any of such entities.

12. This Confirmation Order shall constitute all authority, approvals and consents required, if any, by the laws, rules, or regulations of the General Corporation Law of the State of Delaware or by the Texas Trust Code, as applicable, or of any state or any other applicable Governmental Unit with respect to the implementation, consummation and/or execution of the Plan and any other documents, instruments, or agreements, and any amendments or modifications thereto, any other acts referred to in or contemplated by the Plan Documents and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

13. *Exemption from Transfer Taxes.* The issuance, transfer, or exchange of any securities under or in connection with the Plan, or the transfer of any other assets or property under or in connection with, the Plan or the making or delivery of an instrument of transfer under or in connection with the Plan shall not, pursuant to section 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax or other similar tax.

## B. Treatment of Claims and Interests (Other Than Asbestos Claims)

### i. Bar Date and Objections to Claims

14. *Claims Bar Date.* The Claims Bar Date established by the Bankruptcy Court for the filing of proofs of claim related to Unsecured Claims, Secured Claims, Non–Compensatory Damages Claims, Priority Claims and Priority Tax Claims was October 31, 2002 (or, in the case of Governmental Units, February 17, 2003). The Debtor has objected to all such claims, and none have thus far been Allowed. Asbestos Claims, Administrative Claims and claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan were not subject to the Claims Bar Date. This Confirmation Order establishes the bar date applicable to the filing of Administrative Claims (see paragraph 16 below) and to the filing of claims arising from the rejection of executory contracts and unexpired leases pursuant to the Plan (see paragraphs 100–101). Asbestos Claims shall be filed as provided in the Claims Resolution Procedures.

15. *Objections to Claims.* As soon as practicable, but in no event later than six (6) months after the entry of this Confirmation Order, unless otherwise ordered by the Bankruptcy Court, objections to Claims (other than objections to Asbestos Claims, which shall be allowed or disallowed as provided in the Claims Resolution Procedures) shall be filed with the Bankruptcy Court; provided, however, that Reorganized ACMC may seek to extend such period (or any extended period) for cause.

### ii. Administrative and Priority Claims

#### a. Administrative Claims Bar Date and Estimate of Allowed Administrative Claims

16. *Administrative Claims Bar Date.* The Administrative Claims Bar Date shall be the first Business Day that is at least thirty (30) days after the Effective Date. Claimants holding Administrative Claims against the Debtor not paid on the Effective Date may file a request for payment

of their Administrative Expenses on or before the Administrative Claims Bar Date. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002 and 3020(c) will set, and constitute notice of, the Administrative Claims Bar Date. The NGC Bodily Injury Trust, Reorganized ACMC and any other party in interest will have thirty days after the Administrative Claims Bar Date to review and object to such Claims before a hearing for determination of such Administrative Claims is held by the Bankruptcy Court, provided that such thirty day period of review may be extended by the Bankruptcy Court upon the request of the NGC Bodily Injury Trust or Reorganized ACMC.

17. *Estimate of Allowed Administrative Claims.* Based on estimates provided by the Debtor at the Confirmation Hearing, the amount of Allowed Administrative Claims is estimated to be $1,500,000.

### b. Estimate of Allowed Priority Tax Claims

18. *Absence of Allowed Priority and Non–Priority Tax Claims.* Because no taxing authority asserted a Claim against the Debtor prior to the February 17, 2003 bar date established therefor, no Priority Tax Claims or Non–Priority Tax Claims shall be Allowed against the Debtor or Reorganized ACMC for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor, or any other Entity, to have paid tax or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

19. *Estimate of Allowed Priority Tax Claims.* The amount of Allowed Priority Tax Claims is estimated to be $0.

### c. Estimate of Allowed Priority Claims

20. *Absence of Allowed Priority Claims.* No Priority Claims that were asserted against the Debtor by the Claims Bar Date have been Allowed. In addition, because the Debtor does not have employment contracts the rejection of which might give rise to Priority Claims, the Court anticipates that no Priority Claims shall be Allowed against the Debtor.

21. *Estimate of Allowed Priority Claims.* The amount of Allowed Priority Claims is estimated to be $0.

### d. Estimate of United States Trustee's Fees

22. *Estimate of United States Trustee's Fees.* Based on estimates provided by the Debtor at the Confirmation Hearing, the amount of applicable United States Trustee's Fees is estimated to be included within the estimate of Allowed Administrative Claims.

### e. Administrative and Priority Claims Reserve

23. *Funding of Administrative and Priority Claims Reserve.* Based on the above estimates, the amount required from the NGC Settlement Trust, on behalf of Reorganized ACMC, to fund the Administrative and Priority Claims Reserve shall be $1,500,000. On the Effective Date or as soon as reasonably practicable thereafter, the NGC Settlement Trust shall pay from the Administrative and Priority Claims Reserve all Allowed Administrative Claims, Priority Tax Claims and Priority Claims and any applicable United States Trustee's Fees. Any balance remaining in the Administrative and Priority Claims Reserve after payment of such Claims and Fees shall be paid to the NGC Bodily Injury Trust as part of the Supplemental

NGC Settlement Trust QSF Asbestos Claim Contribution. The NGC Bodily Injury Trust shall pay any such Claims and Fees that are in excess of the Administrative and Priority Claims Reserve.

### iii. Class 2—Secured Claims

24. *No Allowed Secured Claims.* No Secured Claims against ACMC have been Allowed.

### iv. Class 3—Unsecured Claims

25. *No Allowed Unsecured Claims.* As of the date of the entry of this Order, the only remaining Unsecured Claims in Class 3 will be voluntarily released or withdrawn with prejudice if the CCR Reimbursement Agreement Settlement and the Plan are implemented. Given the Court's approval of the Motion to approve the CCR Reimbursement Agreement Settlement and the evidence presented at the Confirmation Hearing that the conditions precedent to implementation of such settlement will likely be satisfied, the Court projects that no Unsecured Claims in Class 3 that were previously filed will be Allowed. Based on the evidence presented at the Confirmation Hearing, the Court projects that no Unsecured Claims filed as a result of the rejection of executory contracts and unexpired leases will be Allowed in the future.

26. *Determination of NGC Settlement Trust Class 3 Contribution.* Because the Court has determined that no Unsecured Claims in Class 3 will be Allowed, the amount of the NGC Settlement Trust Class 3 Contribution is $0.

27. *Disallowance of Contingent Contribution, Reimbursement or Subrogation Claims.* Pursuant to the authority granted by section 502(e)(1)(B) of the Bankruptcy Code, all contingent contribution, reimbursement or subrogation Claims, other than Indirect Asbestos Claims which Indi-rect Asbestos Claims shall be channeled to the NGC Bodily Injury Trust and resolved pursuant to the Claims Resolution Procedures, are hereby disallowed.

### v. Class 6—Penalty Claims

28. *Subordination and Disallowance of Non–Compensatory Damages.* Claims for Non–Compensatory Damages shall be subordinated, disallowed and extinguished on the Effective Date and the holders of such claims shall receive no distribution thereon.

### vi. Class 7—Interests

29. *Cancellation of Interests.* On the Effective Date, all outstanding Interests in ACMC shall be cancelled, and the NGC Settlement Trust, as the sole holder of such Interests, shall receive no distribution thereon.

### C. Reorganized ACMC and the NGC Bodily Injury Trust

30. *Reorganized ACMC.* On and after the Effective Date, ACMC shall be known as Reorganized ACMC, and shall be wholly owned by the NGC Bodily Injury Trust. Alan R. Kahn, Walter J. Taggart, Anne Newman Foreman and W.D. Hilton, Jr. shall be, and hereby are, appointed as the initial members of the board of directors of Reorganized ACMC. W.D. Hilton, Jr. shall be, and hereby is, appointed as the initial President of Reorganized ACMC. Prior to the Effective Date, the new board of directors of Reorganized ACMC shall be authorized to meet and conduct such business as may be necessary or appropriate to implement the Plan and the transactions contemplated thereunder.

31. *Vesting of Assets.* Except as otherwise expressly provided in the Plan, effective on the Effective Date, Reorganized ACMC shall be vested with all of the

assets and property of its former Estate (including, but not limited to Asbestos Insurance Actions and causes of action under chapter 5 of the Bankruptcy Code), free and clear of all Claims, Liens, charges and other interests of holders of Claims, Demands or Interests and may operate its business free of any restrictions imposed by the Bankruptcy Code or by the Court.

32. *Establishment and Purpose of NGC Bodily Injury Trust.* On the Effective Date, the NGC Bodily Injury Trust shall be established in accordance with the NGC Bodily Injury Trust Agreement. The NGC Bodily Injury Trust shall be operated as a Qualified Settlement Fund under section 468B of the Internal Revenue Code. The NGC Bodily Injury Trust will initially be funded with (a) 100% of the Reorganized ACMC Common Stock, (b) the NGC Settlement Trust QSF Asbestos Claim Contribution, (c) the New NGC QSF Settlement Contribution and, if applicable, (d) the *Prostok* Bondholder QSF Contribution. The NGC Bodily Injury Trust will have the right to receive Asbestos Insurance Action Recoveries, including but not limited to any such Recoveries from insurers (whether or not insolvent) and/or the administrators of the estates of such insurers. The purpose of the NGC Bodily Injury Trust shall be, among other things, to (a) direct the liquidation, resolution, payment, and satisfaction of all Asbestos Claims in accordance with the Plan, the Claims Resolution Procedures, and this Confirmation Order; (b) receive, preserve, hold, manage, and maximize the NGC Bodily Injury Trust Assets for use in paying and satisfying Asbestos Claims that have been or will be Allowed by the NGC Bodily Injury Trust pursuant to the Claims Resolution Procedures; (c) direct Reorganized ACMC to prosecute, settle, and manage the disposition of the Asbestos In–Place Insurance Coverage; (d) direct Reorganized ACMC to prosecute, settle, and manage Asbestos Insurance Actions; and (e) take other actions deemed, by the Trustees, to be in the best interests of Asbestos Claimants who are the sole beneficiaries of the NGC Bodily Injury Trust.

33. *Transfer of NGC Settlement Trust Assets to NGC Bodily Injury Trust.* On the Effective Date or such later date as the NGC Settlement Trustees deem appropriate as provided in section 8.4 of the Plan, the NGC Settlement Trust shall contribute the NGC Settlement Trust QSF Asbestos Claim Contribution to the NGC Bodily Injury Trust. Upon completion of the wind-down of the NGC Settlement Trust, and resolution of the *Prostok* Action (by approval and implementation of the *Prostok* Bondholder Settlement or otherwise), the NGC Settlement Trust shall transfer the Excess NGC Settlement Trust Reserved Assets to the NGC Bodily Injury Trust as the Supplemental NGC Settlement Trust QSF Asbestos Claim Contribution. In the discretion of the NGC Settlement Trustees, the NGC Bodily Injury Trust may make partial transfers of the Supplemental NGC Settlement Trust QSF Asbestos Claim Contribution. In consideration for the transfer by the NGC Settlement Trust to the NGC Bodily Injury Trust of the NGC Settlement Trust QSF Asbestos Claim Contribution and the Supplemental NGC Settlement Trust QSF Asbestos Claim Contribution on its own behalf and on behalf of the following parties, the NGC Bodily Injury Trust, the PD TAC, the BI TAC, the Creditors' Committee, the NGC Bodily Injury Trust Advisory Committee, the NGC Legal Representative and the Legal Representative, their successors and assigns and any of their respective Representatives, on the Effective Date, the NGC Settlement Trust and each such party shall be deemed to be, and shall be treated as, a Protected Party for

the purposes of the Supplemental Injunction.

34. *Assumption of Liability for Asbestos Claims.* Upon the Effective Date, the NGC Bodily Injury Trust shall assume automatically, and without further act or deed, sole responsibility and liability for all Asbestos Claims, including, but not limited to, any Current Asbestos Claims, Demands, Indirect Asbestos Claims, Derivative Asbestos Claims, Asbestos Expenses and BI Settlement Claims (but not liability under any BI Settlement Agreement), and such Claims shall be liabilities of the NGC Bodily Injury Trust and shall be resolved and paid by the NGC Bodily Injury Trust pursuant to and in accordance with the Claims Resolution Procedures.

35. No Entity shall be permitted to execute against or receive distributions from the NGC Bodily Injury Trust except in accordance with the terms of the NGC Bodily Injury Trust Documents and the Plan.

36. *Transfer of Direct Actions.* On the Effective Date, any Direct Action held by Current Asbestos Claimants (Class 4) and BI Settlement Claimants (Class 5), as well as by holders of Demands, shall automatically and without further act or deed be transferred to and vested in the NGC Bodily Injury Trust. The NGC Bodily Injury Trust shall be deemed such holders' sole attorney-in-fact to prosecute, at the NGC Bodily Injury Trust's sole discretion, any Direct Actions. In its sole discretion, the NGC Bodily Injury Trust may reassign any Direct Action to any Person that agrees to remit any recovery from such Direct Action to the NGC Bodily Injury Trust for distribution in accordance with the Claims Resolution Procedures to all holders of Asbestos Claims.

37. *TSI Ownership.* The NGC Settlement Trust's ownership interest in TSI shall be transferred to the NGC Bodily Injury Trust as part of the NGC Settlement Trust QSF Asbestos Claim Contribution, and the NGC Bodily Injury Trust shall be authorized to enter into, and own such interest pursuant to, the TSI Shareholder Agreement. The NGC Bodily Injury Trust shall be authorized to enter into the TSI Comprehensive Services Agreement to facilitate the resolution and payment of claims pursuant to the Claims Resolution Procedures; provided, however, that no provision of the TSI Comprehensive Services Agreement shall prohibit, or be construed to prohibit, the Trustees, in the exercise of their reasonable discretion and on reasonable notice to TSI, from terminating the TSI Comprehensive Services Agreement and adopting another mechanism for administration of the Claims Resolution Procedures.

38. *NGC Settlement Trust Causes of Action.* Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, except as otherwise provided in the Plan, the NGC Bodily Injury Trust shall be vested with and have the right to enforce against any Entity any and all of the NGC Settlement Trust's causes of action, with the proceeds of the recovery of any such actions to be deposited in the NGC Bodily Injury Trust; provided, however, that nothing herein shall alter, amend, or modify the injunctions (including the Injunctions), releases, or discharges provided herein. If the *Prostok* Bondholder Settlement (approved below) is implemented, the *Prostok* Bondholder PD Payment will be paid to the NGC Settlement Trust and the *Prostok* Bondholder QSF Contribution will be paid to the NGC Bodily Injury Trust. If the *Prostok* Bondholder Settlement is not implemented, the *Prostok* Action shall remain with the NGC Settlement Trust to be pursued by the NGC Settlement Trust on behalf and for the benefit of its beneficiaries prior to the Effective Date and the

NGC Bodily Injury Trust, on behalf of its beneficiaries, shall be entitled to intervene in the *Prostok* Action or otherwise pursue causes of action against the defendants, other than the Individual *Prostok* Defendants, named in the *Prostok* Action.

39. *Prosecution and Defense of Actions by NGC Bodily Injury Trust.* As of the Effective Date, the NGC Bodily Injury Trust (i) shall be substituted as party plaintiff in each legal action in which the NGC Settlement Trust is the plaintiff (other than the *Prostok* Action); and (ii) shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the NGC Bodily Injury Trust. The NGC Bodily Injury Trust shall be empowered to initiate, prosecute, defend, and resolve all such actions in the name of ACMC or the NGC Settlement Trust if deemed necessary or appropriate by the Trustees. The NGC Bodily Injury Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred subsequent to Confirmation arising from or associated with any legal action or other proceeding which is the subject of this paragraph and shall pay or reimburse all deductibles, retrospective premium adjustments, or other charges which may arise from the receipt of insurance proceeds by Reorganized ACMC or the NGC Bodily Injury Trust. Without in any way limiting the foregoing, Reorganized ACMC and the NGC Bodily Injury Trust shall be empowered to initiate, prosecute, defend, settle, and resolve all Asbestos Insurance Actions and Direct Actions, and to maintain, administer, preserve, or pursue the Asbestos–In–Place Insurance Coverage, the Asbestos Insurance Settlement Agreements, the Asbestos Insurance Action Recoveries, and the Asbestos Insurance Policies. Notwithstanding anything to the contrary in section 10.6 of the Plan, nothing in such section 10.6 creates, modifies, or eliminates any right, duty, or obligation resolved or released pursuant to the Plan or this Confirmation Order.

40. *Preservation of Actions by Debtor.* Except for those actions which may be compromised and settled pursuant to the Plan and this Confirmation Order or those actions which pursuant to the Plan and this Confirmation Order are transferred to the NGC Bodily Injury Trust to be resolved, all actions by the Debtor (including Asbestos Insurance Actions) shall be preserved and retained by the Debtor for enforcement subsequent to the Confirmation of the Plan, and on the Effective Date, such actions shall be assigned to, and vested in, Reorganized ACMC, which shall be deemed to be a "representative" of the Estate of the Debtor, without any further action by the Debtor, Reorganized ACMC, the NGC Bodily Injury Trust, or the Court.

41. *Preservation of Asbestos Insurance Actions.* Subject to the terms of the Plan, the Asbestos Insurance Actions shall be preserved by the Debtor for prosecution by Reorganized ACMC, at the direction of the NGC Bodily Injury Trust. On or after the Effective Date, Reorganized ACMC, at the direction of the NGC Bodily Injury Trust, shall be entitled to compromise or settle the Asbestos Insurance Actions. Except as provided in an Asbestos Insurance Settlement Agreement, or the provisions of the Supplemental Injunction contained herein relative to such Asbestos Insurance Settlement Agreement, neither the Debtor's discharge nor the Injunctions contained herein shall diminish or impair the enforceability of any of the Asbestos Insurance Policies. Reorganized ACMC and the NGC Bodily Injury Trust are, and shall be deemed to be, for all purposes, including, but not limited to, for purposes

of insurance and indemnity, the successor to ACMC in respect of Asbestos Claims. An Allowed Asbestos Claim shall be, and shall be deemed to be, a judgment against Reorganized ACMC and the NGC Bodily Injury Trust (as successor for all purposes to the liabilities of ACMC in respect of Asbestos Claims) in the Allowed Amount of such Allowed Asbestos Claim.

42. *Transfer of ACMC and Reorganized ACMC Assets to NGC Bodily Injury Trust.* On the Effective Date, ACMC shall assign, transfer and convey to the NGC Bodily Injury Trust all right, title and interest to receive proceeds from Asbestos Insurance Action Recoveries. From and after the Effective Date, Reorganized ACMC shall transfer to the NGC Bodily Injury Trust, or directly to Asbestos Claimants if the NGC Bodily Injury Trust so directs, all proceeds received pursuant to (a) the Asbestos Insurance Action Recoveries and (b) other funds that may accrue to Reorganized ACMC (other than any part of the NGC Settlement Trust Class 3 Contribution, except as provided in section 8.2), including, if the CCR Reimbursement Agreement Settlement is not implemented, any recovery attributable to settlement or litigation of the dispute related to the CCR Reimbursement Agreement. In consideration for the transfer of the foregoing on its own behalf and on behalf of the following persons, the NGC Bodily Injury Trust shall pay the Reorganized ACMC Expenses from its funds as provided in paragraph 43 below and, on the Effective Date, ACMC and Reorganized ACMC, their past, present and future Subsidiaries or Affiliates (other than Austin), successors and assigns and any of their respective Representatives shall be deemed to be, and shall be treated as, a Protected Party for purposes of the Supplemental Injunction.

43. *Expenses Paid By NGC Bodily Injury Trust.* The NGC Bodily Injury Trust shall pay all NGC Bodily Injury Trust Expenses. In return for the transfer of Reorganized ACMC's assets to the NGC Bodily Injury Trust as provided in the Plan and in this Confirmation Order, the NGC Bodily Injury Trust shall pay all Reorganized ACMC Expenses from the NGC Bodily Injury Trust Assets. The NGC Bodily Injury Trust shall not be obligated to pay any expenses of Reorganized ACMC other than the Reorganized ACMC Expenses. Neither the Debtor, Reorganized ACMC, nor any of the Protected Parties (other than the NGC Bodily Injury Trust) shall have any obligation to pay any NGC Bodily Injury Trust Expenses. If the *Prostok* Bondholder Settlement is consummated, the NGC Bodily Injury Trust shall be responsible for the payment of the fees and expenses of contingency fee counsel representing the NGC Settlement Trust in the *Prostok* Action.

44. *Excess NGC Bodily Injury Trust Assets.* To the extent there are any NGC Bodily Injury Trust Assets remaining after the payment, in full, of all Allowed Asbestos Claims, all NGC Bodily Injury Trust Expenses, and all Reorganized ACMC Expenses, such excess NGC Bodily Injury Trust Assets shall be transferred, in accordance, with Article VIII of the NGC Bodily Injury Trust Agreement, to such charitable purpose as the Trustees, in their reasonable discretion, shall determine; provided, however, that such chartable purposes, if practicable, shall be related to the treatment of, research regarding or payment of claims related to asbestos-caused disorders.

45. *Unclaimed Property.* Any Cash or other property to be distributed under the Plan, whether by the Disbursing Agent or by the NGC Bodily Injury Trust, that

remains unclaimed (including by an Entity's failure to negotiate a check issued to such Entity) or otherwise not deliverable to the Entity entitled thereto before the later of (a) one year after distribution or (b) 120 calendar days after such Claim becomes an Allowed Claim by a Final Order, shall become vested in, and shall be transferred and delivered to, the NGC Bodily Injury Trust for the benefit of holders of Asbestos Claims. In such event, such Entity's Claim shall no longer be deemed to be Allowed and such Entity shall be deemed to have waived its rights to such payments or distributions under the Plan pursuant to section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan with respect to such Claim.

46. *Trustees of NGC Bodily Injury Trust.* Walter J. Taggart, Anne Newman Foreman and Alan R. Kahn shall be, and hereby are, appointed as the three initial Trustees of the NGC Bodily Injury Trust. W.D. Hilton, Jr., shall be, and hereby is, appointed as the initial Executive Director of the NGC Bodily Injury Trust. All successor Trustees, and any successor Executive Director, shall be appointed in accordance with the terms of the NGC Bodily Injury Trust Agreement. For purposes of performing their duties and fulfilling their obligations under the NGC Bodily Injury Trust Agreement and the Plan, each Trustee shall be deemed to be a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code.

47. *NGC Bodily Injury Trust Advisory Committee.* The NGC Bodily Injury Trust Advisory Committee shall consult with and advise the Trustees of the NGC Bodily Injury Trust regarding the administration of the NGC Bodily Injury Trust and the liquidation and resolution of As-

bestos Claims in accordance with the provisions of the Plan and the NGC Bodily Injury Trust Documents. Russell W. Budd, Mark H. Iola and Robert B. Steinberg, the present members of the Creditors' Committee, shall be, and hereby are, appointed as the initial members of the NGC Bodily Injury Trust Advisory Committee. The members of the NGC Bodily Injury Trust Advisory Committee shall serve from and after the Effective Date pursuant to the terms of the NGC Bodily Injury Trust Documents and this Confirmation Order, and shall have the rights, duties, and responsibilities provided to the NGC Bodily Injury Trust Advisory Committee in the NGC Bodily Injury Trust Documents and this Confirmation Order.

48. *Legal Representative.* Sander L. Esserman shall serve, and hereby is appointed, from and after the Effective Date as the Legal Representative pursuant to Article VII of the NGC Bodily Injury Trust Agreement and this Confirmation Order, and shall have the rights, duties and responsibilities provided to the Legal Representative in the NGC Bodily Injury Trust Documents and this Confirmation Order.

### D. Other Determinations Required By Plan

#### 1. NGC Settlement Trust Distribution Assets and Reserved Assets

49. The NGC Settlement Trust Distribution Assets are all assets of the NGC Settlement Trust other than the NGC Settlement Trust Reserved Assets. The NGC Settlement Trust Reserved Assets are (a) the *Prostok* Action and the NGC Settlement Trust's residual interest in the School District Trust if the *Prostok* Bondholder Settlement (approved below) is not implemented and the *Prostok* Bondholder PD Payment if the *Prostok* Bondholder Settlement (approved below) is implement-

ed, and (b) the Cash required to (i) fund the Additional PD Payment (estimated to be $4,400,000), (ii) fund the Administrative and Priority Claim Reserve (estimated to be $1,500,000) and (iii) pay the NGC Settlement Trust Wind–Down Expenses (estimated to be $1,125,249). The NGC Settlement Trust Reserved Assets shall not be deemed property of ACMC's estate or subject to payment of Asbestos Claims except to the extent of the Excess NGC Settlement Trust Reserved Assets.

**2. NGC Settlement Trust QSF Asbestos Claim Contribution and Supplemental NGC Settlement Trust QSF Asbestos Claim Contribution**

50. The NGC Settlement Trust QSF Asbestos Claim Contribution together with the Supplemental NGC Settlement Trust QSF Asbestos Claim Contribution shall be equal to the amount of the NGC Settlement Trust Distribution Assets because the NGC Settlement Trust Class 3 Contribution is equal to $0. The NGC Settlement Trust QSF Asbestos Claim Contribution is expected to include approximately $90 million in Cash which will be contributed by the NGC Settlement Trust to the NGC Bodily Injury Trust on the Effective Date.

**E. Approval of Plan Settlements**

**i. The New NGC Settlement**

51. *New NGC Settlement.* ACMC and New NGC, among others, have entered into the New NGC Settlement. After considering (a) the probability of success in litigation against New NGC with respect to (i) its alleged liability to Future Asbestos Claimants, (ii) issues related to the Channeling Order, (iii) issues related to the Stipulation Resolving Subsequent Asset Valuation, and (iv) issues related to the *Prostok* Action; (b) the complexity, expense, inconvenience, and delay attending to the foregoing litigation; and (c) other

factors bearing on the wisdom of the compromise, including the interests of creditors; and whether the settlement was a product of arm's length negotiations and was entered into in good faith, each of which factors is discussed in detail in the Findings and Conclusions, the Court has concluded that the New NGC Settlement Agreement is fair, equitable, and reasonable, and is in the best interests of ACMC's Estate, Claimants, including all Asbestos Claimants, and Interest Holders.

52. *Approval of Implementation of New NGC Settlement.* The New NGC Settlement and its implementation pursuant to the Plan is hereby approved in all respects. The Debtor, Reorganized ACMC and the NGC Bodily Injury Trust are hereby authorized to take all actions provided for in the Plan to implement the New NGC Settlement. On the Effective Date, the New NGC Settlement shall be assumed, subject to the NGC Settlement Closing Agreement. No objections to the New NGC Settlement were filed. To the extent any filed objection could be construed or interpreted as an objection to the New NGC Settlement, such objection is overruled.

53. The Court hereby approves the execution and delivery by ACMC, Reorganized ACMC, the NGC Bodily Injury Trust, the Trustees of the NGC Bodily Injury Trust, and the Legal Representative, as applicable, of the documents referenced in section 8.1 of the Plan, including without limitation the New NGC Settlement Releases, the Reorganized ACMC Tax Benefit Acknowledgement, the documents necessary to consummate the settlement of the *Prostok* Action relative to the Individual *Prostok* Defendants, the Asbestos Claims Indemnification Agreement, and the documents necessary to effectuate the dismissal of the Consolidated Appeals and the withdrawal of the Alternate

Claims Resolution Facility previously proposed by the NGC Settlement Trust and ACMC; provided, however, that none of such documents shall be delivered by ACMC, Reorganized ACMC or the NGC Bodily Injury Trust, as applicable, unless and until all of the conditions precedent to the New NGC Settlement have been satisfied or waived, as provided therein.

54. Effective as of the Effective Date, and in consideration for the benefits of the New NGC Settlement, including payment by New NGC of the New NGC QSF Settlement Contribution, New NGC and each of the Protected Parties described in paragraph 78(d) below shall be deemed to be, and shall be treated as, a Protected Party for the purposes of the Supplemental Injunction.

#### ii. BI Settlement Agreements

55. *Incorporated Settlement With Respect to BI Settlement Agreements.* The Plan incorporates a settlement with respect to BI Settlement Claims. After considering (a) the probability of success in litigation with respect to BI Settlement Agreements and potential joint and several liability claims thereunder; (b) the complexity, expense, inconvenience, and delay attending to the foregoing litigation; and (c) other factors bearing on the wisdom of the compromise, including the interests of creditors; and whether the settlement was a product of arm's length negotiations and was entered into in good faith, each of which factors is discussed in detail in the Findings and Conclusions, the Court has concluded that the incorporated settlement with respect to BI Settlement Claims is fair, equitable, and reasonable, and is in the best interests if ACMC's Estate, Claimants, including all Asbestos Claimants, and Interest Holders. No objection to the settlement with respect to BI Settlement Claims was timely filed. To the extent the untimely objection filed by Cascino Vaughan Law Offices raises an objection to the settlement with respect to BI Settlement Claims, such objection is overruled.

56. *Approval of Incorporated BI Settlement Agreement Settlement.* The Settlement with respect to BI Settlement Claims and its implementation pursuant to the Plan is hereby approved in all respects. The Debtor, Reorganized ACMC and the NGC Bodily Injury Trust are hereby authorized to take all actions provided for in the Plan to implement the settlement with respect to BI Settlement Claims.

#### iii. Settling Asbestos Insurance Company Settlements

#### a. Affiliated FM Insurance Company

57. *Affiliated FM Settlement.* ACMC has entered into an Asbestos Insurance Settlement Agreement with Affiliated FM Insurance Company and, as a result, has designated Affiliated FM Insurance Company as a Settling Asbestos Insurance Company under the Plan. After considering the probability of success of the ACMC's insurance clams against Affiliated FM Insurance Company, the complexity of the litigation, expense, inconvenience, and the delay attending to the litigation; the interests of the creditors; and whether the settlement was a product of arm's length negotiations and was entered into good faith, each of which factors is discussed in detail in the Findings and Conclusions and each of which applies to the Asbestos Insurance Settlement Agreement between ACMC and Affiliated FM Insurance Company, the Court has concluded the Settlement Agreement with Affiliated FM Insurance Company is fair, equitable, and reasonable, and is in the best interests of

ACMC's Estate, Claimants, including all Asbestos Claimants, and Interest Holders.

58. The Asbestos Insurance Settlement Agreement with Affiliated FM Insurance Company is approved in all respects, and Affiliated FM Insurance Company is deemed to be, and shall be treated as, a Settling Asbestos Insurance Company under the Plan. The Debtor, Reorganized ACMC and the NGC Bodily Injury Trust are hereby authorized to take all actions necessary to implement the Settlement Agreement with Affiliated FM Insurance Company. Upon consummation of the Asbestos Insurance Settlement Agreement, Affiliated FM Insurance Company shall be deemed to be, and shall be treated as, a Protected Party for the purposes of the Supplemental Injunction.

### b. Stonewall Insurance Company

59. *Stonewall Settlement.* ACMC has entered into an Asbestos Insurance Settlement Agreement with Stonewall Insurance Company and, as a result, has designated Stonewall Insurance Company as a Settling Asbestos Insurance Company under the Plan. After considering the probability of success of the ACMC's insurance claims against Stonewall Insurance Company, the complexity of the litigation, expense, inconvenience, and delay attending to the litigation; the interests of creditors; and whether the settlement was a product of arm's length negotiations and was entered into in good faith, each of which factors is discussed in detail in the Findings and Conclusions and each of which applies to the Asbestos Insurance Settlement Agreement between ACMC and Stonewall Insurance Company, the Court has concluded that the Settlement Agreement with Stonewall Insurance Company is fair, equitable, and reasonable, and is in the best interests of ACMC's Estate, Claimants, in-

cluding all Asbestos Claimants, and Interest Holders.

60. The Asbestos Insurance Settlement Agreement with Stonewall Insurance Company is approved in all respects, and Stonewall Insurance Company is deemed to be, and shall be treated as, a Settling Asbestos Insurance Company under the Plan. The Debtor, Reorganized ACMC and the NGC Bodily Injury Trust are hereby authorized to take all actions necessary to implement the Settlement Agreement with Stonewall Insurance Company. Upon consummation of the Asbestos Insurance Settlement Agreement, Stonewall Insurance Company shall be deemed to be, and shall be treated as, a Protected Party for the purposes of the Supplemental Injunction.

### c. Old Republic Insurance Company

61. *Old Republic Settlement.* ACMC has entered into an Asbestos Insurance Settlement Agreement with Old Republic Insurance Company and, as a result, has designated Old Republic Insurance Company as a Settling Asbestos Insurance Company under the Plan. After considering the probability of success of the ACMC's insurance claims against Old Republic Insurance Company, the complexity of the litigation, expense, inconvenience, and delay attending to the litigation; the interests of creditors; and whether the settlement was a product of arm's length negotiations and was entered into in good faith, each of which factors is discussed in detail in the Findings and Conclusions and each of which applies to the Asbestos Insurance Settlement Agreement between ACMC and Old Republic Insurance Company, the Court has concluded that the Settlement Agreement with Old Republic Insurance Company is fair, equitable, and reasonable, and is in the best interests of

ACMC's Estate, Claimants, including all Asbestos Claimants, and Interest Holders.

62. The Asbestos Insurance Settlement Agreement with Old Republic Insurance Company is approved in all respects, and Old Republic Insurance Company is deemed to be, and shall be treated as, a Settling Asbestos Insurance Company under the Plan. The Debtor, Reorganized ACMC and the NGC Bodily Injury Trust are hereby authorized to take all actions necessary to implement the Settlement Agreement with Old Republic Insurance Company. Upon consummation of the Asbestos Insurance Settlement Agreement, Old Republic Insurance Company shall be deemed to be, and shall be treated as, a Protected Party for the purposes of the Supplemental Injunction.

### d. Houston General Insurance Company

63. *Houston General Settlement.* ACMC has entered into an Asbestos Insurance Settlement Agreement with Houston General Insurance Company and, as a result, has designated Houston General Insurance Company as a Settling Asbestos Insurance Company under the Plan. After considering the probability of success of the ACMC's insurance claims against Houston General Insurance Company, the complexity of the litigation, expense, inconvenience, and delay attending to the litigation; the interests of creditors; and whether the settlement was a product of arm's length negotiations and was entered into in good faith, each of which factors is discussed in detail in the Findings and Conclusions and each of which applies to the Asbestos Insurance Settlement Agreement between ACMC and Houston General Insurance Company, the Court has concluded that the Settlement Agreement with Houston General Insurance Company is fair, equitable, and reasonable, and is in

the best interests of ACMC's Estate, Claimants, including all Asbestos Claimants, and Interest Holders.

64. The Asbestos Insurance Settlement Agreement with Houston General Insurance Company is approved in all respects, and Houston General Insurance Company is deemed to be, and shall be treated as, a Settling Asbestos Insurance Company under the Plan. The Debtor, Reorganized ACMC and the NGC Bodily Injury Trust are hereby authorized to take all actions necessary to implement the Settlement Agreement with Houston General Insurance Company. Upon consummation of the Asbestos Insurance Settlement Agreement, Houston General Insurance Company shall be deemed to be, and shall be treated as, a Protected Party for the purposes of the Supplemental Injunction.

### e. The Constitution State Insurance Company

65. *The Constitution State Settlement.* ACMC has entered into an Asbestos Insurance Settlement Agreement with The Constitution State Insurance Company and, as a result, has designated The Constitution State Insurance Company as a Settling Asbestos Insurance Company under the Plan. After considering the probability of success of the ACMC's insurance claims against The Constitution State Insurance Company, the complexity of the litigation, expense, inconvenience, and delay attending to the litigation; the interests of creditors; and whether the settlement was a product of arm's length negotiations and was entered into in good faith, each of which factors is discussed in detail in the Findings and Conclusions and each of which applies to the Asbestos Insurance Settlement Agreement between ACMC and The Constitution State Insurance Company, the Court has concluded that the Settlement Agreement with The

Constitution State Insurance Company is fair, equitable, and reasonable, and is in the best interests of ACMC's Estate, Claimants, including all Asbestos Claimants, and Interest Holders.

66. The Asbestos Insurance Settlement Agreement with The Constitution State Insurance Company is approved in all respects, and The Constitution State Insurance Company is deemed to be, and shall be treated as, a Settling Asbestos Insurance Company under the Plan. The Debtor, Reorganized ACMC and the NGC Bodily Injury Trust are hereby authorized to take all actions necessary to implement the Settlement Agreement with The Constitution State Insurance Company. Upon consummation of the Asbestos Insurance Settlement Agreement, The Constitution State Insurance Company shall be deemed to be, and shall be treated as, a Protected Party for the purposes of the Supplemental Injunction.

#### iv. Settlement of Claims Against NGC Settlement Trust for Transfer of ACMC Funds

67. *Incorporated Settlement With Respect to Transfer of ACMC Funds.* The Plan incorporates a settlement of all potential claims against the NGC Settlement Trust, the NGC Settlement Trustees and the Representatives of the NGC Settlement Trust with respect to the affairs of such trust since confirmation of the 1993 Reorganization Plan. After considering (a) the probability of success in litigation with respect to such claims; (b) the complexity, expense, inconvenience, and delay attending to the foregoing litigation; and (c) other factors bearing on the wisdom of the compromise, including the interests of creditors; and whether the settlement was a product of arm's length negotiations and was entered into in good faith, each of which factors is discussed in detail in the

Findings and Conclusions, the Court has concluded that the incorporated settlement with respect to such claims is fair, equitable, and reasonable, and is in the best interests of ACMC's Estate, Claimants, including all Asbestos Claimants, and Interest Holders.

68. *Approval of Incorporated Settlement.* The Plan's incorporated settlement of any potential disputes concerning the NGC Settlement Trust, as described in the immediately preceding section, which essentially provides for the NGC Settlement Trust to pay ACMC's Administrative, Priority Tax and Priority Claims and to fund the NGC Settlement Trust Class 3 Contribution, is hereby approved in all respects. As the Court has determined that the NGC Settlement Trust Class 3 Contribution is $0, none of the NGC Settlement Trust Distribution Assets will be allocated to ACMC for payment of Class 3 Claimants.

#### v. *Prostok* Bondholder Settlement

69. *Prostok Bondholder Settlement.* ACMC and the Senior Bondholder Defendants, among others, have entered into the *Prostok* Bondholder Settlement. After considering (a) the probability of success in litigation against the Senior Bondholder Defendants with respect to the *Prostok* Action; (b) the complexity, expense, inconvenience, and delay attending to the foregoing litigation; and (c) other factors bearing on the wisdom of the compromise, including the interests of creditors; and whether the settlement was a product of arm's length negotiations and was entered into in good faith, each of which factors is discussed in detail in the Findings and Conclusions, the Court has concluded that the *Prostok* Bondholder Settlement is fair, equitable, and reasonable, and is in the best interests of ACMC's Estate, Claimants, including all Asbestos Claimants and

Interest Holders and the beneficiaries of the New NGC Settlement Trust.

70. *Approval of Prostok Bondholder Settlement.* The *Prostok* Bondholder Settlement and its implementation pursuant to the Plan and the allocation of the proceeds of such settlement, net of legal fees and expenses incurred by the NGC Settlement Trust in prosecuting the *Prostok* Action, as between holders of Asbestos Claims who are the sole beneficiaries of the NGC Bodily Injury Trust and Asbestos Property Damage Claimants who are a class of beneficiaries of the NGC Settlement Trust, is hereby approved in all respects. The Stipulation (as defined in the Findings and Conclusions) related to the *Prostok* Bondholder Settlement is hereby approved. The Debtor, Reorganized ACMC and the NGC Bodily Injury Trust are hereby authorized to take all actions provided for in the Plan to implement the *Prostok* Bondholder Settlement.

71. The Court hereby approves the execution and delivery by Reorganized ACMC and the NGC Bodily Injury Trust (as applicable) of the documents referenced in section 8.2 of the Plan, including without limitation the *Prostok* Bondholder Release and the *Prostok* Bondholder Indemnification Agreement, and such other stipulations and other documents, releases and waivers necessary to consummate the *Prostok* Bondholder Settlement.

72. Upon implementation of the *Prostok* Bondholder Settlement, including payment by the *Prostok* Senior Bondholders of the *Prostok* Bondholder QSF Contribution, the Senior Bondholder Defendants, and any partner of the Senior Bondholder Defendants, and any insurer of the Senior Bondholder Defendants but solely in such Person's capacity as insurer of the Senior Bondholder Defendants; together with their successors and assigns, shall each be

deemed to be, and shall each be treated for all purposes as, a Protected Party.

### vi. Settlement of Claims Related to CCR Reimbursement Agreement

73. *Triggering of Plan Provisions Dependent Upon Consummation of CCR Reimbursement Agreement Settlement.* The Court has approved the CCR Reimbursement Agreement Settlement by separate order. Consummation of the CCR Reimbursement Agreement Settlement will automatically trigger, without further order of the court, the following provisions of the Plan and Plan Documents that are dependent on the approval and consummation of the CCR Reimbursement Agreement: (i) the modified definitions of "BI Settlement Agreement" and "BI Settlement Claim"; and (b) the provisions of the Claims Resolution Procedures that allow the CCR Settlement Parties, to the extent they are an assignee of a BI Settlement Claimant's rights under a BI Settlement Agreement, to submit a BI Settlement Claim subsequent to the BI Settlement Claim Bar Date so long as the CCR Settlement Parties submit a BI Settlement Claim Form relative to such BI Settlement Claim to the NGC Bodily Injury Trust no later than 180 days after the CCR Settlement Parties obtain an assignment of such BI Settlement Claim.

### F. Liability to Asbestos Claimants

74. *Liability for Asbestos Claims.* Any Asbestos Claim that is Allowed shall constitute a judgment of liability against Reorganized ACMC and the NGC Bodily Injury Trust as successor to the liabilities of ACMC, and shall be a determination of the amount that Reorganized ACMC and the NGC Bodily Injury Trust are legally obligated to pay. Notwithstanding the foregoing, or any provision in the Plan or this Confirmation Order to the contrary,

nothing contained therein or herein or in the New NGC Settlement shall constitute an admission by New NGC of liability for any Asbestos Claim and, except as provided in this paragraph or in section 10.10 of the Plan as to ACMC, Reorganized ACMC and the NGC Bodily Injury Trust, no provision of the Plan or this Confirmation Order shall be construed as an admission or adjudication of liability of any Protected Party for any Claim or Demand, including without limitation, any Asbestos Claim.

### G. Discharge, Releases And Injunctions

#### i. Discharge and Release

75. Except as specifically provided in paragraph 86 below, effective on the Effective Date, the Debtor and Reorganized ACMC shall be and are hereby discharged from and in respect of any and all Current Asbestos Claims and other Claims, including but not limited to any Claim of a kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a Proof of Claim based on such Claim was filed or deemed filed under section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules, (ii) such Claim is or was Allowed under section 502 of the Bankruptcy Code, or (iii) the holder of such Claim has voted on or accepted the Plan. Further, but in no way limiting the generality of the foregoing, except as otherwise specifically provided in the Plan, all holders of Claims, including all Current Asbestos Claims, and other Entities receiving rights under the Plan are hereby bound by the Plan and shall be and are hereby presumed conclusively to have released the Debtor and Reorganized ACMC from any Current Asbestos Claims and other Claims held by such Entities. Notwithstanding anything to the contrary herein, however, the Plan and this Order shall not discharge or release any claim or demand of the Debtor, Reorganized ACMC, or any Asbestos Claimant against any Asbestos Insurance Company, except as provided in an Asbestos Insurance Settlement Agreement.

76. Except as provided in paragraph 86 below, on the Effective Date, any judgment at any time obtained, to the extent that such judgment is a determination of liability of the Debtor with respect to any debt or Claim discharged hereunder, is rendered null and void.

77. Except as provided in paragraph 86 below, effective on the Effective Date, each Protected Party (as defined below) shall be and is hereby discharged from and in respect of any and all Current Asbestos Claims, including but not limited to any such Current Asbestos Claims of a kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a Proof of Claim based on such Claim was filed or deemed filed under section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules, (ii) such Claim is or was Allowed under section 502 of the Bankruptcy Code, or (iii) the holder of such Claim has voted on or accepted the Plan. Further, but in no way limiting the generality of the foregoing, all holders of Current Asbestos Claims and other Entities receiving rights under the Plan are hereby bound by the Plan and shall be and are hereby presumed conclusively to have released the Protected Parties from any Current Asbestos Claims held by such Entities.

78. For purposes of this Confirmation Order, "Protected Party" means any of the following parties:

 (a) ACMC and Reorganized ACMC, their past, present and future Subsidiaries or Affiliates (other than Austin), successors and assigns and any of their respective Representatives;

(b) the NGC Settlement Trust, the NGC Bodily Injury Trust, the PD TAC, the BI TAC, the Creditors' Committee, the NGC Bodily Injury Trust Advisory Committee, the NGC Legal Representative and the Legal Representative, their successors and assigns and any of their respective Representatives;

(c) the following Settling Asbestos Insurance Companies: Affiliated FM Insurance Company, Stonewall Insurance Company, Old Republic Insurance Company, Houston General Insurance Company, and The Constitution State Insurance Company, their successors and assigns and any of their Representatives; *provided, however,* no Settling Asbestos Insurance Company shall be a Protected Party unless any payments required under their respective Asbestos Insurance Settlement Agreement have been paid to the NGC Bodily Injury Trust or the NGC Bodily Injury Trust has received assurance, satisfactory to Reorganized ACMC and the NGC Bodily Injury Trust, that such payments will be made;

(d) New NGC; any past, present or future Subsidiary (other than Austin) or Affiliate of New NGC; any Representative of New NGC or of any past, present or future Subsidiary (other than Austin) or Affiliate of New NGC; any past, present or future shareholder, insurer or lender of New NGC or any past, present or future Subsidiary (other than Austin) or Affiliate of New NGC, but solely in such Person's capacity as shareholder or insurer of, or lender to, New NGC or such Subsidiary or Affiliate; any former officer or director of Old NGC; and any successor or assign to any of the foregoing Entities; and

(e) if and only if the *Prostok* Bondholder QSF Contribution is paid, the Senior Bondholder Defendants (as defined in the Plan to include: Water Street Corporate Recovery Fund I, L.P., TCW Special Credits, The TCW Group, Inc., Trust Company of the West, TCW Asset Management Company, TCW Trust Management Company, Fidelity Management & Research Company and Houlihan Lokey Howard & Zukin Capital; their Representatives, Subsidiaries, and Affiliates, and any regulated investment company or other investment vehicle or entity or account or client for which any of the Senior Bondholder Defendants, their Representatives, Subsidiaries or Affiliates has provided or provides investment management or investment advisory service); and any partner of the Senior Bondholder Defendants, and any insurer of the Senior Bondholder Defendants, but solely in such Person's capacity as insurer of the Senior Bondholder Defendants; together with their successors and assigns.

79. Except as otherwise provided in paragraph 86 below, the satisfaction, release, and discharge set forth in section 9.1 of the Plan and paragraphs 75–77 above, shall also operate as an injunction prohibiting and enjoining the commencement or continuation of any action or the employment of process with respect to, or any act to collect, recover from, or offset (a) any Claim discharged in section 9.1 of the Plan and paragraphs 75–77 above; and (b) any cause of action, whether known or unknown, based on the same subject matter as any Claim discharged in such section 9.1 and paragraphs 75–77 above.

80. On and after the Effective Date, the Debtor shall be fully and finally discharged of any liability or obligation with respect to a Disallowed Claim or a Disallowed Interest, and any order creating a Disallowed Claim or a Disallowed Interest that is not a Final Order as of the Effec-

tive Date solely because of an Entity's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date. This Confirmation Order, except as otherwise provided herein or in the Plan, constitutes an order: (a) disallowing all Claims (other than Asbestos Claims which will be allowed and disallowed in accordance with the Claims Resolution Procedures) and Interests to the extent such Claims and Interests are not allowable under any provision of section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Interests, and Claims for unmatured interest, and (b) disallowing or subordinating, as the case may be, any Claims, or portions of Claims, for penalties or Non–Compensatory Damages.

### ii. The Supplemental Injunction and the Asbestos Insurance Company Injunction

81. In order to supplement the injunctive effect of the Discharge Injunction, and pursuant to the exercise of the legal and equitable jurisdiction and power set forth in sections 524(g) and 105(a) of the Bankruptcy Code, the Supplemental Injunction and the Asbestos Insurance Company Injunction described below shall be implemented in connection with the NGC Bodily Injury Trust and shall take effect as of the Effective Date.

82. *Supplemental Injunction.* To induce, preserve and promote the settlements contemplated by and provided for in the Plan and approved in this Confirmation Order, pursuant to sections 524(g) or 105(a) (or both) of the Bankruptcy Code, all Asbestos Claims shall be channeled to the NGC Bodily Injury Trust for a remedy under the Claims Resolution Procedures and all Asbestos Claimants and Entities

which have held or asserted, which hold or assert, or which may in the future hold or assert, any Asbestos Claim shall be and are hereby permanently stayed, restrained and enjoined from taking any action against any Protected Party (as defined in paragraph 78 above) with respect to any such Asbestos Claim (the "Supplemental Injunction"), including without limitation, for the purpose of directly or indirectly obtaining a judgment, collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Asbestos Claim, including, but not limited to:

(a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Asbestos Claim against any Protected Party, or against the property of any Protected Party with respect to any such Asbestos Claim;

(b) enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree or order against any Protected Party or against the property of any Protected Party with respect to any such Asbestos Claim;

(c) creating, perfecting or enforcing any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any such Asbestos Claim;

(d) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any Protected Party or against the property of any Protected Party with respect to any such Asbestos Claim; and

(e) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, including without limitation,

the Plan Documents and the NGC Bodily Injury Trust Documents relating to such Asbestos Claim.

Notwithstanding the foregoing, the Supplemental Injunction shall not prevent the assertion of a setoff or recoupment claim under applicable law by a third party in response to an Asbestos Claim asserted by a Protected Party against such third party, providing that any recovery on any such setoff or recoupment shall not exceed the recovery by the Protected Party on the Asbestos Claim asserted by it.

83. The Supplemental Injunction provided in paragraph 82 above is an integral part of the Plan, shall first become effective on the Effective Date, shall continue in effect permanently thereafter and may not be vacated, amended or modified after the Effective Date. Notwithstanding the foregoing, the Supplemental Injunction shall become effective (a) as to any particular Settling Asbestos Insurance Company only upon the NGC Bodily Injury Trust's receipt of the settlement consideration provided under the Asbestos Insurance Settlement Agreement with such Settling Asbestos Insurance Company; and (b) as to the Senior Bondholder Defendants only upon the payment by the Senior Bondholder Defendants of the settlement payments due, including the *Prostok* Bondholder QSF Contribution, under the terms of the *Prostok* Bondholder Settlement.

84. *Asbestos Insurance Company Injunction.* In order to preserve and promote the property of the Estate as well as the settlements contemplated and provided for in the Plan and approved in this Confirmation Order, pursuant to section 105(a) of the Bankruptcy Code, all Entities other than ACMC, Reorganized ACMC, the NGC Settlement Trust or the NGC Bodily Injury Trust which have held or asserted, which hold or assert, or which may in the future hold or assert any Asbestos Claim

against an Asbestos Insurance Company shall be and are hereby stayed, restrained, and enjoined from taking any action against such Asbestos Insurance Company for the purpose of directly or indirectly obtaining a judgment, collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Asbestos Claim, including, but not limited to:

(a) commencing or continuing, in any manner, any action or other proceeding of any kind with respect to any Asbestos Claim against any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company;

(b) enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree, or order against any Asbestos Insurance Company or against the property of any Asbestos Insurance Company with respect to any such Asbestos Claim;

(c) creating, perfecting, or enforcing any Lien of any kind against any Asbestos Insurance Company or the property of any Asbestos Insurance Company with respect to any such Asbestos Claim;

(d) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind against any obligation due any Asbestos Insurance Company or against the property of any Asbestos Insurance Company with respect to such Asbestos Claim; and

(e) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, including, without limitation, the Plan Documents, relating to such Asbestos Claim.

Notwithstanding the foregoing, the Asbestos Insurance Company Injunction shall not prevent the assertion of a setoff

or recoupment claim under applicable law by a third party in response to an Asbestos Claim asserted by an Asbestos Insurance Company against such third party, providing that any recovery on any such setoff or recoupment shall not exceed the recovery by the Protected Party on the Asbestos Claim asserted by it.

85. Upon request of Reorganized ACMC or the NGC Bodily Injury Trust and after notice to any Asbestos Insurance Company that is not a Settling Asbestos Insurance Company, the Asbestos Insurance Company Injunction may be modified, vacated or amended by the Bankruptcy Court. In addition, the Asbestos Insurance Company Injunction terminates as to any Asbestos Insurance Company that is not a Settling Asbestos Insurance Company, other than AMICO if it has complied with its obligations under the AMICO Agreement, upon exhaustion of the policy limits of the underlying Asbestos Insurance Policy.

86. Notwithstanding any other provision of the Plan or this Confirmation Order to the contrary, the satisfaction, release and discharge, and the Injunctions set forth in sections 9.1, 9.2 and 9.3 of the Plan and paragraphs 75–85 of this Confirmation Order, respectively, shall not serve to satisfy, discharge, release, or enjoin claims or causes of action (a) by any Entity to enforce rights granted under the Plan, (b) by the NGC Settlement Trust, Reorganized ACMC or the NGC Bodily Injury Trust to prosecute any Asbestos Insurance Action or otherwise assert any claim under an Asbestos Insurance Policy against Asbestos Insurance Companies that are not Settling Asbestos Insurance Companies, (c) by any Entity against the NGC Bodily Injury Trust for payment of Asbestos Claims, in accordance with the Claims Resolution Procedures, or of NGC Bodily Injury Trust Expenses, (d) by the NGC

Bodily Injury Trust to collect any indebtedness due under the New NGC Note or (e) by any Entity against Reorganized ACMC for payment of Reorganized ACMC Expenses. Moreover, the Asbestos Insurance Company Injunction shall not enjoin or alter the rights of the NGC Bodily Injury Trust or Reorganized ACMC to assign a claim or cause of action against an Asbestos Insurance Company that is not a Settling Asbestos Insurance Company to a claimant so that such claimant may assert such claim or cause of action against such Asbestos Insurance Company, or to assert any Direct Claim against an Asbestos Insurance Company or to assign any such Direct Claim to a claimant for a recovery.

87. Each of the injunctions (including, but not limited to, the Injunctions) entered in favor of a Settling Asbestos Insurance Company by this Order is limited in scope to matters based upon, relating to, arising out of, or in any way connected with (i) any Asbestos Claim; (ii) any Asbestos Insurance Policy that is the subject of an Asbestos Insurance Settlement Agreement; or (iii) the subject matter encompassed by such Asbestos Insurance Settlement Agreement.

### iii. Continuation Of Prior Stays And Injunctions

88. The Channeling Order, and all of the injunctions and/or automatic stays provided for, in or in connection with the Reorganization Case, whether pursuant to section 105, section 362 or any other provision of the Bankruptcy Code, other applicable law or court order, in existence immediately prior to Confirmation shall remain in full force and effect during the period between the Confirmation Date and the earlier of the Outside Date or the Effective Date and, thereafter, as provided by the Plan, this Confirmation Order or by their own terms. In addition, on

and after Confirmation, the Debtor may seek such further orders as it may deem necessary to preserve the status quo during the time between Confirmation and the Effective Date. If the Outside Date shall occur before the Effective Date, nothing herein contained shall impact, modify or otherwise affect the Channeling Order which shall continue in full force and effect unless and until modified in accordance with its terms and the 1993 Reorganization Plan, subject to the orders entered by the District Court in the Consolidated Appeals.

## H. Supplemental Effects of Consummation of the Plan

89. On the Effective Date and in addition to the effect of confirmation set forth in section 1141 of the Bankruptcy Code:

(a) Any and all Claims or Demands by any Entity against the Protected Parties relating to, associated with, arising from or on account of any Asbestos Claim shall be deemed fully and permanently satisfied, settled, released, extinguished, discharged and enjoined; provided, however, that Asbestos Claims against Reorganized ACMC shall be channeled to the NGC Bodily Injury Trust and may only be asserted against the NGC Bodily Injury Trust in accordance with the Claims Resolution Procedures.

(b) All Claims or Demands addressed in the New NGC Settlement Releases or in the *Prostok* Bondholder Release that any parties to such releases had, have or will have as of the Effective Date against one another shall be deemed fully and permanently satisfied, settled, released, extinguished, discharged and enjoined, including, without limitation any and all claims known or unknown, contingent, liquidated, fixed, matured, unmatured, disputed, undisputed, legal or equitable, relating to, associated with, arising from or on account of:

(i) any Asbestos Claims;

(ii) any claims for reimbursement or indemnification with respect to demands made by insurance carriers, including any such demands against ACMC or the NGC Settlement Trust for interest or other monies allegedly owed pursuant to the Wellington Agreement;

(iii) any *Prostok* Claim; or

(iv) any alleged acts, omissions, events or occurrences from the Effective Date of the 1993 Reorganization Plan to the Effective Date of the Plan; *provided, however,* that nothing shall constitute a release of, or preclude the assertion of, any claims for breach or enforcement of the provisions of the Plan, the New NGC Settlement Closing Agreement, any provision of the New NGC Plan Documents or the *Prostok* Bondholder Settlement.

(c) The Channeling Order, to the extent inconsistent with the provisions of the Plan, shall be dissolved and replaced by the Injunctions.

(d) The permanent injunction provisions of articles 9(c) and 10(a) of the 1993 Confirmation Order, including without limitation the provisions permanently enjoining the assertion of Asbestos Property Damage Claims (as defined in the 1993 Reorganization Plan), shall remain in full force and effect.

(e) Except as specifically provided in the Plan, neither New NGC; any past, present or future Subsidiary (other than Austin) or Affiliate of New NGC; any Representative of New NGC or of any past, present or future Subsidiary (other than Austin) or Affiliate of New NGC; any past, present or future shareholder, insurer or lender of New NGC or any past, present or future Subsidiary (other

than Austin) or Affiliate of New NGC, but solely in such Person's capacity as shareholder or insurer of, or lender to, New NGC or such Subsidiary or Affiliate; any former officer or director of Old NGC; and any successor or assign to any of the foregoing Entities, on the one hand, nor the Debtor, Reorganized ACMC, the NGC Settlement Trust, the NGC Bodily Injury Trust, the members of the BI TAC, the NGC Bodily Injury Trust Advisory Committee or the Legal Representative, or their respective Representatives, on the other hand, shall have (i) any liability or obligation under the Plan to one another or (ii) any interest in or rights to information regarding the ongoing management or affairs of the other.

(f) The 1995 Stipulation shall be superseded by the Plan.

(g) The NGC Settlement Trust, the Trustees, the NGC Bodily Injury Trust, the NGC Bodily Injury Trustees, ACMC, Reorganized ACMC, the NGC Legal Representative, the Legal Representative and the members of the NGC Bodily Injury Trust Advisory Committee shall not take or assist in any way in any action which would have the design or effect of vacating, modifying or amending, in whole or in part, any of the protections afforded by the Supplemental Injunction.

## I. Other Matters Incident to Plan Confirmation and Implementation of Plan

### i. Exoneration and Reliance

90. The Protected Parties shall not be liable for any claim that may exist under any applicable law, other than a claim, if any, for fraudulent conduct, to any Claimant, Interest Holder or other Entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time prior to the Effective Date in connection with the Reorganization Case, including in connection with: (a) the management or operation of the Debtor, Reorganized ACMC, or the discharge of their duties under the Bankruptcy Code, (b) the implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Documents, (c) any action taken in connection with either the enforcement of the Debtor's rights against any Entities or the defense of Claims asserted against the Debtor with regard to the Reorganization Case, (d) any action taken in the negotiation, formulation, development, proposal, disclosure, solicitation, Confirmation or implementation of the Plan, Plan Documents or the New NGC Settlement, or (e) the administration of the Plan, Reorganized ACMC, the NGC Bodily Injury Trust, or the assets and property to be distributed pursuant to the Plan. The Protected Parties may reasonably rely upon the opinions of their respective counsel, accountants, and other experts or professionals and such reliance, if reasonable, shall conclusively establish good faith and the absence of willful misconduct; provided, however, that a determination that such reliance is unreasonable or unwarranted shall not, by itself, constitute a determination or finding of bad faith or willful misconduct. Notwithstanding the foregoing, nothing contained in section 8.11 of the Plan or this paragraph shall impair or prevent actions to enforce the Plan or the Plan Documents, including without limitation the New NGC Plan Documents.

91. The Debtor, the Creditors' Committee, the Legal Representative, and each of their respective employees, agents, and professionals, and all other Entities that participated in the formulation, negotiation, solicitation, approval, and confirmation of the Plan shall be and hereby are

entitled to the rights, benefits and protections of sections 1125(d) and 1125(e) of the Bankruptcy Code.

92. The Debtor shall not be liable, on account of any solicitation of acceptances of the Plan, or participation in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities pursuant to the express terms of section 1125(e) of the Bankruptcy Code.

93. On the Effective Date, the Creditors' Committee shall be dissolved and the members, attorneys, accountants, and other professionals thereof shall be released and discharged of and from all further authority, duties, responsibilities, liabilities and obligations related to, or arising from, the Reorganization Case.

94. After distribution of the entire Supplemental NGC Settlement Trust QSF Asbestos Claim Contribution, the Trustees of the NGC Settlement Trust, the NGC Legal Representative, the members of the BI TAC and the PD TAC and the members, attorneys, accountants, and other professionals thereof, shall (i) be released and discharged of and from all further authority, duties, responsibilities, liabilities, and obligations related to, or arising from, the 1993 Reorganization Plan and (ii) shall not be liable for any claim that may exist under any applicable law, other than a claim, if any, for fraudulent conduct, to any Claimant, Interest Holder or other Entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time prior to such final distribution in connection with: (a) the discharge of their duties relative to the NGC Settlement Trust or ACMC, (b) the implementation of any of the transac-

tions provided for, or contemplated in, the 1993 Reorganization Plan, (c) any action taken in connection with either the enforcement of the Debtor's rights against any Entities or the defense of Claims asserted against the Debtor with regard to the NGC Reorganization Case, (d) any action taken in the implementation of the 1993 Reorganization Plan or the New NGC Settlement, or (e) the administration of ACMC or the NGC Settlement Trust, or the assets and property to be distributed by those Entities pursuant to the Plan.

### ii. Fee Shifting

95. If any Claimant, Interest Holder or other Entity asserts any claim, either in law or in equity, against any Protected Party by reason of any action or inaction described in section 8.11 of the Plan or paragraph 90 above of this Confirmation Order, or in any other way arising from or related to the Reorganization Case, ACMC, the NGC Settlement Trust, the 1993 Reorganization Plan, the NGC Bodily Injury Trust, the NGC Reorganization Cases (other than as expressly provided in the Plan or the Claims Resolution Procedures) and does not prevail in such action, suit or proceeding in which such claim is asserted, such Claimant, Interest Holder or other Entity shall be liable for and must pay the reasonable attorney's fees and expenses of such Protected Party and, as a condition to going forward with such action, suit or proceeding at the outset thereof, such Claimant, Interest Holder, or other Entity shall be required to provide appropriate proof and financial assurances of its capacity to make such payment of reasonable attorneys' fees and costs in the event they fail to prevail. This paragraph shall not impose any obligation on any Protected Party to pay, or provide appropriate proof and financial assurance of its capacity to pay, reasonable attorneys' fees and costs in the event that a Claimant, Interest Holder or other Entity prevails in

an action, suit or proceeding that is filed against such Protected Party.

### iii. No Successor Liability

96. Except as otherwise expressly provided in the Plan, no Protected Party, pursuant to the Plan or otherwise, assumes or agrees to perform, pay, or indemnify or otherwise has any responsibilities for any liabilities or obligations of the ACMC Liable Parties relating to or arising out of the operations of or assets of the ACMC Liable Parties, whether arising prior to, on, or after the Confirmation Date. Without limiting the generality of the foregoing, no Protected Party shall have any successor or transferee liability of any kind or character; provided, however, that Reorganized ACMC and the NGC Bodily Injury Trust shall be liable for Asbestos Claims as provided in subsection (a) of section 10.10 of the Plan, which liability shall be channeled to the NGC Bodily Injury Trust and resolved only in accordance with the Claims Resolution Procedures.

### iv. No Effect on Stipulation Resolving Subsequent Asset Valuation Issues

97. Nothing contained in the Plan or this Confirmation Order shall in any way affect, abridge, impair, reduce, waive or forgive the obligations of the parties to the Stipulation Resolving Subsequent Asset Valuation Issues entered in the NGC Reorganization Cases, including the obligation to make the Additional PD Payment upon satisfaction of the conditions set forth in the Stipulation Resolving Subsequent Asset Valuation Issues.

### J. Executory Contracts

### i. Assumption and Rejection of Prepetition Unexpired Leases and Executory Contracts

98. *Rejections.* Any prepetition unexpired lease or executory contract (includ-

ing but not limited to any BI Settlement Agreement or any other alleged settlement agreement with respect to any Asbestos Claim) that has not been expressly assumed or rejected by the Debtor with the Bankruptcy Court's approval on or prior to the confirmation Date shall, as of the Effective Date, be deemed to have been rejected by the Debtor unless such prepetition executory contract or unexpired lease is listed on Exhibit C to the Plan.

99. *Assumption.* The prepetition executory contracts and unexpired leases listed on Exhibit C attached to the Plan are hereby assumed by the Debtor. No cure payments are due and owing with respect to any such assumed executory contracts and unexpired leases.

### ii. Damages Upon Rejection.

100. *Claims Under Executory Contracts Other Than BI Settlement Agreements.* The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Entity seeking damages by reason of the rejection of any prepetition executory contract or unexpired lease other than BI Settlement Agreements.

101. *Bar Date for Rejection Damages and Allowance of Rejection Claims.* This Confirmation Order shall constitute an order approving the rejection as of the Effective Date of all prepetition executory contracts and unexpired leases (other than BI Settlement Agreements) that were not expressly assumed by the Debtor as provided in paragraph 98 above. If the rejection of any prepetition executory contract or unexpired lease (other than a BI Settlement Agreement) gives rise to a Claim by the non-Debtor party or parties to such prepetition executory contract or unexpired lease, such Claim shall be forever

barred and discharged and shall not be enforceable against the Debtor, Reorganized ACMC, their respective successors or their respective properties unless a Proof of Claim is filed and served on the Debtor and its counsel within thirty (30) days after the entry of this Confirmation Order. To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Plan as a Class 3 Unsecured Claim, and the holder thereof shall receive distributions as a holder of an Allowed Unsecured Claim in Class 3 pursuant to the Plan; notwithstanding the foregoing, any Claim for Non–Compensatory Damages shall be treated as a Class 6 Penalty Claim. Within five (5) Business Days after the Confirmation Date, the Debtor shall provide written notice of the bar date established by this paragraph, which notice may be combined with notice of entry of this Confirmation Order, by first class mail, postage prepaid, to those Entities that may assert a Claim for damages from the rejection of a prepetition executory contract or unexpired lease pursuant to the Plan.

102. *Claims Under BI Settlement Agreements.* This Confirmation Order constitutes an order approving the rejection as of the Effective Date of all BI Settlement Agreements. BI Settlement Claims shall be treated as Class 5 Claims and shall receive the treatment specified for such Claims in the Claims Resolution Procedures. A BI Settlement Claim shall be forever barred and discharged and shall not be enforceable against the Debtor, Reorganized ACMC, the NGC Bodily Injury Trust, their respective successor or their respective properties unless evidence of such BI Settlement Claim is filed, in accordance with the Claims Resolution Procedures, no later than the BI Settlement Claim Bar Date; notwithstanding the foregoing, if the CCR Reimbursement Agreement Settlement is implemented, the CCR and the current and former members of the CCR that are parties to such settlement shall be entitled to file BI Settlement Claims after the BI Settlement Claim Bar Date, in accordance with the CCR Reimbursement Agreement Settlement and the Claims Resolution Procedures.

103. *New NGC Settlement.* On the Effective Date, the New NGC Settlement shall be assumed by Reorganized ACMC, subject to the NGC Settlement Closing Agreement, and such assumption is hereby approved. After the Effective Date, all of ACMC's rights and obligations against New NGC, and all of New NGC's rights and obligations against ACMC, shall be governed by the New NGC Plan Documents.

## K. Jurisdiction

104. *Jurisdiction.* Until the Reorganization Case is closed, the Court shall retain the fullest and most extensive jurisdiction permissible, including that necessary to ensure that the purposes and intent of the Plan are carried out. Moreover, the NGC Bodily Injury Trust shall be subject to the continuing jurisdiction of the Court in accordance with the requirements of section 468B of the Internal Revenue Code and the regulations issued pursuant thereto.

105. *Referral to Bankruptcy Court of Jurisdiction for Specific Purposes.* Except as otherwise provided in paragraph 106(b) below, jurisdiction respecting the following matters after Confirmation shall be, and hereby is, referred to the Bankruptcy Court:

 (a) to hear and determine any and all adversary proceedings, applications, and contested matters, including any remands or appeals;

(b) to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(c) to hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, set-off, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of 28 U.S.C. § 157;

(d) to enter and implement such orders as may be appropriate in the event this Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(e) to hear and determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan, the Plan Documents and the transactions contemplated thereunder;

(f) to consider, subject to section 12.5 of the Plan and paragraph 106(b) below, any modification of the Plan pursuant to Section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court;

(g) to hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, including without limitation the Plan Documents, and to enforce, including by specific performance, the provisions of the Plan and the Plan Documents;

(h) to enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or other obligations contained in the Plan and this Confirmation Order;

(i) to enter such orders or judgments, including, but not limited to, injunctions as are necessary to enforce the title, rights, and powers of the Debtor, Reorganized ACMC, and the NGC Bodily Injury Trust;

(j) to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor or Reorganized ACMC arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan Documents, or relating to the period of administration of the Reorganization Case;

(k) to hear and determine all applications for compensation of professionals and reimbursement of expenses under sections 330, 331, or 503(b) of the Bankruptcy Code;

($l$) to hear and determine any causes of action relating to the Debtor or the NGC Bodily Injury Trust to the fullest extent permitted by 28 U.S.C. § 157, including but not limited to any cause of action related to the amount owed to ACMC under the CCR Reimbursement Agreement;

(m) to hear and determine such other matters and for such other purposes as may be provided in this Confirmation Order;

(n) to consider and act on the compromise and settlement of any Claim against or Interest in the Debtor or its Estate including, without limitation, any disputes relating to the Administrative Claims Bar Date, the Claims Bar Date or the BI Settlement Claim Bar Date;

($o$) to recover all assets of the Debtor and property of the Estate, wherever located;

(p) to hear and determine all questions and disputes regarding title to the assets of the Debtor or its Estate;

(q) to hear and determine any other matters related to the Plan, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Reorganization Case;

(r) to retain continuing jurisdiction with regard to the NGC Bodily Injury Trust sufficient to satisfy the requirements of Treas. Reg. Section 1.468B–1(c)(1);

(s) to hear and determine any and all motions, applications or adversary proceedings brought by or against the NGC Bodily Injury Trust related to (1) enforcement or interpretation of the NGC Bodily Injury Trust Documents and (2) amendment, modification, alteration or repeal of any provision of the NGC Bodily Injury Trust Documents, if such hearing and determination by the Bankruptcy Court is required pursuant to the Plan;

(t) to enter such orders as are necessary to implement and enforce the Discharge Injunction and the Asbestos Insurance Company Injunction;

(u) to hear and determine any other matter or proceeding not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(v) to enforce the provisions of the Fee Shifting Indemnification Agreement, the New NGC Settlement Release, the *Prostok* Release, the School District Release, New NGC Note, the Standby Letter of Credit and the New NGC Settlement Closing Agreement;

(w) to enforce the provisions of the *Prostok* Bondholder Settlement, the *Prostok* Bondholder Indemnification Agreement and the *Prostok* Bondholder Release and any other settlement approved in this Confirmation Order (except to the extent otherwise provided in the AMICO Agreement);

(x) to hear and determine any other matter or proceeding involving the Reorganization Case, except those specifically reserved to the Court pursuant to paragraph 106(b) below; and

(y) to enter a final decree closing the Reorganization Case.

106. *Matters Within the Jurisdiction of this Court.*

(a) *Withdrawal of Reference.* By order entered on March 3, 2003, the Court withdrew the reference of proceedings in the Reorganization Case regarding confirmation of the Plan, issuance of the injunction pursuant to sections 524(g) and 105(a) of the Bankruptcy Code, and estimation of Asbestos Claims. Pursuant to such order, the Court partially referred such matters to the Bankruptcy Court to conduct an evidentiary hearing and submit a report and recommendation to the Court regarding confirmation and the issuance of the Supplemental Injunction. In compliance with such order, on April 24, 2003 and May 1, 2003, the Bankruptcy Court conducted hearings on confirmation of the Plan. Based on the evidentiary hearing, the Bankruptcy Court entered its Findings and Conclusions. Subsequently, the Bankruptcy Court submitted its Report and Recommendation to this Court. Parties in interest have been afforded ten (10) days from entry of the Bankruptcy Court's Report and Recommendation to file an objection thereto with this Court. The entry of this Confirmation Order, which includes issuance of the Supplemental Injunction, shall satisfy the requirements of section 524(g) of the Bankruptcy Code.

(b) *Continuing Jurisdiction of This Court.* This Court shall, without regard

to amount in controversy, retain exclusive jurisdiction after Confirmation to hear and determine any proceeding relating to (i) the Supplemental Injunction, including without limitation, the enforcement, validity, application or construction of the Supplemental Injunction, or of section 524(g) of the Bankruptcy Code with respect to the Supplemental Injunction, (ii) the Asbestos Claims Indemnification Agreement and (iii) construction or interpretation of the Confirmation Order; provided, however, that any proceeding described in subsection (iii) of this paragraph 106(b), except for proceedings covered by subsection (i) and (ii) above, shall be commenced in the Bankruptcy Court which shall conduct such hearings as are necessary and appropriate, following which the Bankruptcy Court shall submit a report and recommendation to this Court. Any proceeding described in subsections (i) and (ii) of this paragraph 106(b) shall be commenced only in this Court and shall be heard by an Article III district court judge.

## L. Miscellaneous

107. Each Settlement Agreement, and its implementation pursuant to the Plan, is approved pursuant to sections 105, 363, 365, 541, and 1107 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules. The entry of the Confirmation Order, which includes issuance of the Supplemental Injunction, shall satisfy the requirements of section 524(g) of the Bankruptcy Code.

108. Except as otherwise expressly provided in the Plan or otherwise Allowed by Final Order of the Court, no interest, penalty, or late charge arising after the Petition Date shall be allowed on any Claim or Interest.

109. Any portion of an Allowed Asbestos Claim which constitutes Non–Compensatory Damages shall be subordinated to payment in full of other Allowed Asbestos Claims in accordance with the terms of the Claims Resolution Procedures.

110. No attorneys' fees, Non–Compensatory Damages, penalties, or interest shall be paid with respect to any Claim or Interest except as Allowed by a Final Order of the Court or in accordance with the terms of the Claims Resolution Procedures.

111. Subject to the limitations provided in section 553 of the Bankruptcy Code, the Debtor, Reorganized ACMC, or the NGC Bodily Injury Trust, as applicable, may, but shall not be required to, setoff against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor, Reorganized ACMC or the NGC Bodily Injury Trust, as the case may be, may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, Reorganized ACMC or the NGC Bodily Injury Trust of any such claim against such holder. Without limiting the foregoing, the Debtor, Reorganized ACMC or the NGC Bodily Injury Trust, as applicable, may setoff the amount owed by ACMC, if any, to the CCR and its members against the amount owed to ACMC by the CCR and its members under the CCR Reimbursement Agreement. Any dispute regarding the amount of such setoff or application of the CCR Reimbursement Agreement shall be determined by the Bankruptcy Court. Notwithstanding the foregoing, if the CCR Reimbursement Agreement Settlement is implemented, such Agreement shall govern the setoff rights and obligations of the parties thereto.

112. The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect, and enforceability of such provision and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan.

113. Section 1.1.136 of the Plan shall be and is hereby amended by the addition of the following language at the end of such definition: "; and Case No. 05–03–00432–CV; *Walter J. Taggart, Alan R. Kahn, Anne N. Foreman as Trustees, and W.D. Hilton, Jr., as Former Trustee and Current Executive Director, of the NGC Settlement Trust, Sander Esserman as Successor to Daniel M. Phillips, Legal Representative, Birdville, Independent School District and Tyler Junior College v. Peter Browning, Edward. A. Porter, Autino O. Maraia, Gerald P. Carroll, Bernard L. Kasriel, Cynthia A. Hartley, Water Street Corporate Recovery Fund I, L.P., TCW Special Credits, The TCW Group, Inc., Trust Company of the West, TCW Asset Management Company, Fidelity Management & Research Company, Houlihan Lokey Howard & Zukin Capital and National Gypsum Company;* In the Fifth District Court of Appeals, Dallas, Texas."

## M. Notice

114. The Debtor shall promptly serve notice of the entry of this Confirmation Order, together with notice of the last day for filing administrative expense claims and claims arising from the rejection of executory contracts (other than BI Settlement Agreements), substantially in the form of Exhibit A attached hereto (the "Confirmation Notice"), on all Claimants and Interest Holders listed on the Debtor's Master Service List filed with the Court and on all parties to executory contracts or unexpired leases rejected pursuant to the Plan.

115. No later than fourteen days after entry of this Order, the Debtor shall publish the Confirmation Notice in the *Wall Street Journal* (National Edition) and *USA Today.*

116. This Confirmation Order shall be, and hereby is, declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any applicable. Governmental Unit for filing and recording purposes without further or additional orders, certifications or other supporting documents.

117. *Appeals.* The reversal or modification of this Confirmation Order on appeal shall not affect the validity of the Plan, the Plan Documents, or any other agreement, document, instrument or action authorized by this Confirmation Order or under the Plan as to the Debtor, Reorganized ACMC, the NGC Bodily Injury Trust, the NGC Settlement Trust, ·New NGC, or any other Person acting in good faith, whether or not that Person knows of the appeal, unless this Confirmation Order is stayed pending appeal.

### EXHIBIT A

*NOTICE, PURSUANT TO BANKRUPTCY RULES 2002 AND 3020(c) OF (A) ENTRY OF CONFIRMATION ORDER AND ISSUANCE OF INJUNCTIONS UNDER SECTIONS 524(g) AND 105(a) OF THE BANKRUPTCY CODE AND (B) BAR DATES FOR FILING OF ADMINISTRATIVE CLAIMS AND REJECTION CLAIMS*

TO: ALL CREDITORS, CURRENT AND FUTURE ASBESTOS CLAIMANTS, PARTIES TO REJECTED EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OTHER PARTIES IN INTEREST

PLEASE TAKE NOTICE that, on ―――――――, 2003, the District Court en-

tered an Order (the "Confirmation Order") (a) Confirming the Third Amended Plan of Reorganization for Asbestos Claims Management Corporation, dated December 12, 2002 (as modified by the Technical Modifications filed on April 21, 2003, the "Plan") and (b) Issuing Injunctions Under Sections 524(g) And 105(a) of the Bankruptcy Code;

PLEASE TAKE FURTHER NOTICE that paragraph 82 of the Confirmation Order issues the Supplemental Injunction that enjoins the assertion of Asbestos Claims (as defined in the Plan) against the Protected Parties (as defined in paragraph 78 of the Confirmation Order);

PLEASE TAKE FURTHER NOTICE that the bar date for the filing of any Administrative Claim shall be 4:30 p.m. on the first Business Day that is at least thirty (30) days after the Effective Date of the Plan (the "Administrative Claims Bar Date"); immediately following its occurrence, the Effective Date of the Plan will be posted on the Debtor's website at *www.NGCBITrust.org,* and creditors and other parties in interest are urged to consult the Debtor's website periodically so that they are informed about such Effective Date and the corresponding Administrative Claims Bar Date. The bar date for the filing of any claim arising from the rejection of any executory contract or unexpired lease with the Debtor (other than claims arising under BI Settlement Agreements) shall be thirty (30) days after entry of the Confirmation Order (the "Rejection Claims Bar Date").;

PLEASE TAKE FURTHER NOTICE that, by the Administrative Claims Bar Date or the Rejection Claims Bar Date, which may be applicable, any Administrative Claim against the Debtor or any claim arising from the rejection of any executory contract or unexpired lease ("Rejection Claim") with the Debtor (other than claims

arising under BI Settlement Agreements (as defined in the Plan)) must be filed with the Clerk of the Bankruptcy Court, 1100 Commerce Street, Room 12A24, Dallas, Texas 75242, and served so as to be received by the following parties: (1) Michael A. Rosenthal, Gibson, Dunn & Crutcher LLP, 2100 McKinney Avenue, Suite 1100, Dallas, Texas 75201; (2) George McElreath, Office of the United States Trustee, 1100 Commerce Street, Rm 9C60, Dallas, Texas 75242; (3) W.D. Hilton, Jr., President of the Debtor and Executive Director of NGC Bodily Injury Trust, 2716 Lee Street, Suite 500, Greenville, Texas 75401–4107; (4) Garland S. Cassada, Robinson, Bradshaw & Hinson, 1900 Independence Center, 101 North Tryon Street, Charlotte, North Carolina 28246; (5) Sander L. Esserman, Stutzman, Bromberg, Esserman & Plifka, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 and (6) Julie W. Davis, Caplin & Drysdale, Chartered, One Thomas Circle, N.W., Washington, D.C. 20005;

PLEASE TAKE FURTHER NOTICE that any executory contract and unexpired lease with the Debtor that is not listed on Exhibit C to the Plan shall be deemed to be rejected as of the Effective Date of the Plan;

PLEASE TAKE FURTHER NOTICE that any Administrative Claim that is not timely filed and served by the Administrative Claims Bar Date or any Rejection Claim that is not timely filed and served by the Rejection Claims Bar Date shall be disallowed with prejudice;

PLEASE TAKE FURTHER NOTICE that the NGC Bodily Injury Trust, Reorganized ACMC and any other party in interest shall have thirty days after the Administrative Claims Bar Date or the Rejection Claims Bar Date, which may be applicable, to review and object to any timely filed Administrative Claims or Re-

jections Claims, provided that such thirty day review and objection period may be extended by the Bankruptcy Court upon the request of the NGC Bodily Injury Trust or Reorganized ACMC. After the expiration of the objection period, the Bankruptcy Court shall conduct a hearing, on notice to the applicable Administrative Claimant or Rejection Claimant, on any disputed Administrative Claim or Rejection Claim;

PLEASE TAKE FURTHER NOTICE that Asbestos Claims and claims arising under BI Settlement Agreements need not be filed by the Administrative Claims Bar Date. No later than one hundred and eighty (180) days after the Effective Date of the Plan, claim filing materials shall be distributed by the NGC Bodily Injury Trust to each person, or attorney for such person, with a known Asbestos Claim, including claims under BI Settlement Agreements. For further information concerning the filing of Asbestos Claims, including BI Settlement Claims, Asbestos Claimants, or their counsel, should contact the NGC Bodily Injury Trust, 2716 Lee Street, Suite 500, Greenville, Texas 75401–4107 (Tel: 800–580–2191); and

PLEASE TAKE FURTHER NOTICE that a copy of the Confirmation Order and/or Plan may be obtained from the Debtor's website at *www.NGCBITrust.org,* from the Clerk of the District Court or the Clerk of the Bankruptcy Court or by written or email request to Debtor's counsel, Michael A. Rosenthal, Gibson, Dunn & Crutcher LLP, 2100 McKinney Avenue, Suite 1100, Dallas, Texas 75201 (*mrosenthal@gibsondunn.com* ).